UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND


CIVIL ACTION NO. 06-116-HRW


GEORGE ANDERSON, ET AL.                                        PLAINTIFFS,


V.                              **MAGISTRATE JUDGE'S REPORT
                                AND RECOMMENDATION**


RIDGE TOOL COMPANY, ET AL.                                    DEFENDANTS.


## I. INTRODUCTION

This matter has been referred to the undersigned [R. 57] for purposes of issuing a report and recommendation regarding the Defendants' Motion for Partial Summary Judgment. [R. 35]. Having considered the briefs of the parties, and being otherwise fully advised, this Court recommends, for the reasons set forth within, that the Defendants' Motion for Partial Summary Judgment be granted.

## II. FACTUAL & PROCEDURAL BACKGROUND

This matter involves a suit filed by Plaintiffs George and Gay Rebecca Anderson against Defendants Ridge Tool Company and Emerson Electric Company. Ridge Tool Company, an Ohio corporation with its principal place of business in Ohio, is the manufacturer of the Ridgid 300 Power Drive [hereinafter "Ridgid 300"], which is described as: "an electric-motor-driven power drive which centers and chucks pipe, conduit and rod (bolt stock) and rotates it while cutting, threading and reaming operations are performed." [R. 35, Exh. I - Ridgid 300 Operator's Manual]. Defendant Emerson Electric Company is a Missouri corporation with its principal place of business in Missouri;

Emerson is the sole shareholder of Ridge Tool Company.

The case arises from an accident that occurred on July 18, 2005, while Plaintiff George Anderson was working for Industrial Contractors, Inc. [R. 33, George Anderson Dep. 62:10-13]. Mr. Anderson had been working for Industrial Contractors for approximately ten-to-twelve weeks prior to the accident; on the day of the accident his job site was a plant owned by AK Steel. [Anderson Dep. 135:11-14]. On the day of the accident, Mr. Anderson was working in tandem with Roger Markwell. The two men were using a Ridgid 300 that was present on the AK Steel job site, even though the machine was not owned by their employer, it was common for contractors at that site to use machines that belonged to other companies. [R. 37, Markwell Dep. 9:15-13:21]. The Ridgid 300 used by Mr. Anderson and Mr. Markwell on the day of the accident was owned by Pritchard Electric Company. [R. 38, Michael Williams Dep.15:19-18:19]. Further facts regarding the condition of the machine, and the specific warnings provided by the manufacturer will be discussed *infra*.

On the day of the accident, Mr. Markwell was working as a pipe fitter, and was the operator of the machine whenever pipe had to be cut. Mr. Anderson was working as a welder and he also assisted Mr. Markwell in cutting the pipe. [Anderson Dep. 139:16-140:6]. At some point early in the morning of July 18, 2005, Mr. Markwell was operating the Ridgid 300 and Mr. Anderson was standing near the machine. While the machine was operating, Mr. Anderson stepped up to the pipe and "cradled" it, letting it roll in his gloves, and prepared to catch it when the cut was complete. [Anderson Dep. 183:5-184:4]. At some point while he was cradling the pipe, the pipe became entangled in his coveralls [Markwell Dep. 6:13-15]; AK Steel issued coveralls to all the contractors working on the premises, and Mr. Anderson was wearing a pair of these coveralls when the accident occurred. [Anderson Dep. 156:3-159:3]. As his coveralls became entangled in the machine, Mr.

2

Anderson yelled "ho," and Mr. Markwell took his foot off the pedal of the machine, which shut off its power. However, the machine turned another two or three times after Mr. Markwell let off the pedal. [Markwell Dep. 10:22-12:2]. As the machine continued to turn, Mr. Anderson was dragged underneath the pipe and then thrown over top of it and slammed to the ground. [Anderson Dep. 198:14-200:13].

As a result of being entangled in the machine and being thrown to the ground, Mr. Anderson suffered severe injuries to his body, particularly to his knee, ankle and back. [R. 1, Complaint at 3]. Mr. Anderson claims that he still suffers shooting pain and numbness in his leg as a result of the injury. [Anderson Dep. 118:22-121:10]. On June 27, 2006, the Plaintiffs filed suit in Boyd Circuit Court, and Defendant Ridge Tool subsequently removed the case to the United States District Court for the Eastern District of Kentucky. [R. 1]. In their complaint, the Plaintiffs allege liability based on theories of negligence, breach of warranty, failure to warn, and strict liability for defects in manufacture or design. [R. 1]. The matter is currently before the undersigned on the Defendants' Motion for Partial Summary Judgment. [R. 35].

### III. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

While the court must view all facts in the light most favorable to the non-moving party and give him or her the benefit of all reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the non-moving party cannot avoid summary judgment merely by resting on the pleadings. See Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In other words, "the nonmoving party must present 'significant probative evidence' to show that 'there is [more than] some metaphysical doubt as to the material facts.'" Dixon v. Gonzales, 2007 WL 750532 (6th Cir. 2007) (citing Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993)).  Thus, where the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Matsushita, 475 U.S. at 586-87.

Additionally, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Rather, "[t]he nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

## IV. ANALYSIS

The Defendants argue that they are entitled to partial summary judgment on three grounds: first, Defendant Emerson Electric argues that summary judgment should be granted on all claims against them because they are not a proper party to this action; second, both Defendants argue that the Plaintiffs lack privity of contract, and thus cannot make claims for breach of warranty; and third, the Defendants argue that the Plaintiffs' claim for failure to warn should be dismissed because of

lack of proximate cause. [R. 35]. These arguments will be discussed in turn.

**A. Defendant Emerson Electric Company is not a Proper Party to the Action**

The Defendants' first argument is that Defendant Emerson Electric Company is entitled to summary judgment on all claims. The Defendants argue that the Plaintiffs failed to show that Emerson was involved in the manufacture of the Ridgid 300, and that Emerson cannot otherwise be held liable for the actions of its subsidiary corporation. [R. 35, Memo. at 2]. The Plaintiffs' only response is that

> [t]he Plaintiff has been presented no evidence by the Defendants to clarify the legal status of the Emerson Company constituents so that the Plaintiff can feel secure in limiting its complaint to Ridge Tool Company.

[R. 36 at 2]. The only affirmative evidence presented by the Plaintiffs regarding the relationship between these two corporations is that "[t]he website for Ridge Tool Company refers to Emerson Tool Company as an 'affiliate of Ridge Tool Company.'" [Id.]

There are two distinct ways in which the Plaintiffs can show that Emerson is liable in this case. First, the Plaintiffs can prove that Emerson is directly liable for placing the Ridgid 300 in commerce, thus making Emerson potentially liable under the Kentucky Product Liability Act. KRS 411.300 et seq. Under this theory of liability, Emerson would be subject to strict liability as set forth in section 402A of the Restatement (Second) of Torts. Worldwide Equip., Inc. v. Mullins, 11 S.W.3d 50 (Ky. App. 1999).  Secondly, the Plaintiffs can seek to hold Emerson liable for the actions of Ridge Tool Company, based on the parent-subsidiary relationship between the two corporations. Liability under this theory would turn on whether the Plaintiffs prove that it is necessary to "pierce the corporate veil" and hold Emerson, the sole shareholder of Ridge Tool Company, liable for the actions of the corporation.

5

As to the theory of direct liability, the Plaintiffs have completely failed to allege any facts that would indicate that Emerson was involved in placing the Ridgid 300 in the stream of commerce. "The very underlying purpose of strict liability is to permit injured parties a method of reaching back to the manufacturer or distributer of commercial products, following some form of failure on the product's part." Worldwide Equip., Inc. v. Mullins, 11 S.W.3d 50, 55 (Ky. App. 1999). Even viewing the facts in the light most favorable to the non-moving party, the Plaintiff has not directed this Court to any evidence in the record to show that Emerson was in any way involved in designing, manufacturing, marketing, transporting, selling, or maintaining the Ridgid 300. In the absence of a showing that Emerson was somehow involved with the Ridgid 300 there is no legal basis for holding Emerson liable for any injuries caused by the Ridgid 300. The Plaintiffs, as the non-moving party, bear the burden of showing that there is some genuine issue of material fact, and have not done so in regard to this theory of liability.

The theory of liability more strongly pursued by the Plaintiffs is that Emerson, as the parent-shareholder of Ridge Tool Company, is liable for the actions of its subsidiary corporation. Ridge Tool Company, a publicly-traded corporation, is a wholly-owned subsidiary corporation of Emerson Electric. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998) *citing* Douglas & Shanks, Insulation from Liability Through Subsidiary Corporations, 39 Yale L.J. 193 (1929). This general principle is limited by

> an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate

form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf....[P]rinciples of corporate separateness have been plainly and repeatedly held not applicable where stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company.

Bestfoods, 524 U.S. at 62-63 (internal citations and punctuation omitted). It is incumbent upon the Plaintiffs to present some specific argument as to why the separate corporate form should be ignored, since it is clear that "limited liability is the rule not the exception." Anderson v. Abbott, 321 U.S. 349, 362 (1944).

The question currently before this Court is whether the Plaintiffs have presented enough evidence to survive summary judgment on the issue of whether the Court should "pierce the corporate veil" and hold Emerson (a shareholder) liable for the actions of Ridge Tool Company. Under Kentucky law, "three theories have been used to pierce the corporate veil: (1) equity; (2) alter ego; (3) instrumentality." United States v. WRW Corp., 778 F. Supp. 919, 922-23 (E.D. Ky. 1991), aff'd, 986 F.2d 138 (6th Cir. 1993); see also, Miller, Russell L., Note, Piercing the Corporate Veil in Kentucky: An Analysis of United States v. WRW Corp., 22 N. Ky. L. Rev. 541 (1995). When determining whether to pierce the corporate veil, "a number of factors are considered in all cases no matter what 'test' is being applied." White v. Winchester Land Develop. Corp., 584 S.W.2d 56, 62 (Ky. App. 1979). The Kentucky courts will pierce the corporate veil "reluctantly and cautiously and then only in the presence of a combination of the following factors":

> (1) undercapitalization; (2) a failure to observe the formalities of corporate existence; (3) nonpayment or overpayment of dividends; (4) a siphoning off of funds by the dominant shareholder(s); and (5) the majority shareholders having guaranteed corporate liabilities in their individual capacities.

Id. (internal citations omitted).

7

It is the opinion of this Court that the Plaintiffs have not presented enough evidence to avoid summary judgment on this issue, and thus, Emerson should be dismissed from this case. The only affirmative evidence presented by the Plaintiffs is that Ridge Tool is a wholly-owned subsidiary of Emerson Electric, and that Ridge Tool's website lists Emerson Tool Company as an 'affiliate of Ridge Tool Company.'" [R. 36 at 2]. Even viewing these facts in the light most favorable to the Plaintiff, the mere fact that Emerson owns stock in Ridge Tool Company does not automatically subject Emerson to liability for Ridge Tool Company's actions. See, e.g., Louisville Gas & Elec. Co. v. Moore, 284 S.W. 1082, 1084 (Ky. 1926); Shepherd v. Banking & Trust Co. of Jonesboro, 79 F.2d 767, 769 (6th Cir. 1935). Kentucky law clearly holds that the "mere ownership of all the stock of one corporation by another...[is not] sufficient to create identity of corporate interest between the two companies." Kentucky Elec. Power Co. v. Norton Coal Mining Co., 93 F.2d 923, 926 (6th Cir. 1938). Furthermore, the limited references on the website to an "affiliate" relationship between the Defendants is not sufficient to establish either that Ridge Tool is an "alter ego" of Emerson, or that Emerson exerts a high level of control over Ridge Tool. See Precision Inc., v. Kenco/Williams, Inc., 66 Fed. Appx. 1, 6 (6th Cir. 2003) ("references to a subsidiary as a 'division' are not the equivalent to evidence that the entities are a 'single economic entity.'").

The Plaintiffs have not shown that there is a genuine issue of material fact on this issue. Virtually no evidence has been presented regarding the nature of the relationship between Emerson Electric and Ridge Tool Company. The Court, therefore, is of the opinion that all claims against Emerson Electric Company should be dismissed.

**B. Breach of Warranty**

The Defendants argue that privity of contract does not exist between the Plaintiffs and the

Defendant, and thus, the Plaintiffs' claim for breach of warranty cannot be sustained. [R. 35, Memo. at 8-9]. The Plaintiffs counter by citing Dealers Transport Co. v. Battery Distrib. Co., 402 S.W.2d 441 (Ky. 1965), for the proposition that privity of contract is not required in a products liability case based on breach of an implied warranty.

The Plaintiffs' broad reading of  Dealers Transport does not survive close scrutiny. Subsequent decisions have interpreted Dealers Transport much more narrowly than the Plaintiffs would suggest. In Williams v. Fulmer, 695 S.W.2d 411 (Ky. 1985), the Kentucky Supreme Court stated: "Dealers Transport did not abolish privity in those cases where liability is [based upon] warranty, which is a sales concept governed by the U.C.C." Williams, 695 S.W.2d at 413. More recently, the court stated:

> [w]hile there is no question that the Dealers Court openly entertained the idea of disposing of privity as a prerequisite for products liability actions involving breach of warranty, the Court ultimately declined to endorse that view, deciding that the concept of strict liability, as defined in Section 402A of the Restatement (Second) of Torts, was the better approach.

Compex International Co. v. Taylor, 209 S.W.3d 462, 464 (Ky. 2006).[1] Contrary to the assertions of the Plaintiffs, Kentucky law clearly requires privity of contract for a breach of warranty claim:

> in Williams v. Fulmer, 695 S.W.2d 411 (Ky. 1985), we recognize the limiting nature of privity of contract requirement in the Kentucky version of the Uniform Commercial Code, KRS 355.2-318. We hold that breach of warranty is not a viable theory in a personal injury claim for a product sold in a defective condition *unless there is privity of contract*, except in the limited circumstances specified in the statute.

Real Estate Marketing, Inc. v. Franz, 885 S.W.2d 921, 926 (Ky. 1994) (emphasis added).

---

[1] Plaintiffs' citation to C.O. Herme, Inc. v. R.C. Tway Co., 294 S.W.2d 534 (Ky. 1956), is likewise unavailing. "The claim in Herme was not predicated upon any theory of warranty," but was based upon negligence. Dealers Transport., 402 S.W.2d at 445.

9

Based on the holdings in <u>Williams</u>, <u>Franz</u>, and <u>Compex</u>, a party asserting a personal injury claim based on breach of warranty must still meet the privity requirement. "If liability is based on sale of the product, it can be extended beyond those persons in privity of contract only by some provision of the U.C.C. as adopted in Kentucky." <u>Williams</u>, 695 S.W.2d at 413; <u>see also</u>, <u>Compex</u>, 209 S.W.3d at 464. The only U.C.C. provision that potentially extends breach of warranty under these circumstances is KRS § 355.2-318. <u>Compex</u> at 464. That statute provides that in certain circumstances a warranty, "whether express or implied extend[s] to any natural person who is in the family or household of [the] buyer or who is a guest in his home" KRS § 355.2-318.

The Plaintiffs expressly admit that they are not in privity with the Defendants, and that they do not rely upon KRS § 355.2-318. [R. 36 at 3]. Furthermore, the case law makes it clear that KRS § 355.2-318 does not extend to employees of the buyer. The Kentucky Court of Appeals has stated, "[i]t continues to be obvious to this Court that the Legislature did not intend to include employees of the buyer within the parameters of the statute." <u>McLain v. Dana Corp.</u>, 16 S.W.3d 320, 326 (Ky. App. 1999). Plaintiff George Anderson is not an employee of the buyer, but of an entirely different company. The Plaintiffs have cited no statutory or case law that would permit this Court to find that privity exists in the circumstances presented by this case, and therefore the Defendants' Motion for Partial Summary Judgment regarding the breach of warranty claims should be granted.

**C. Claim for Failure to Warn Should be Dismissed**

The final argument asserted in the Defendants' motion is that the "Plaintiffs' failure to warn claim lacks the necessary element of proximate cause." [R. 35, Memo. at 9]. The parties inspected the machine in July of 2007, at Pritchard Electric Company's warehouse in Huntington, West Virginia. [R. 35, Memo at 4]. The original warning plate measured approximately three inches high,

10

and seven inches wide; the background was brushed aluminum, and all letters were black, with the exception of the word "Warning," which was in larger font than the remainder of the text, and was colored "Ridgid Red." [R. 35, Exh. N]. The text of the original plate was as follows:

1.    For your own safety, read and understand Operator's Manual before operating this unit and use recommended accessories.
2.    *Do not operate unit with loose or frayed clothing. It may get caught in rotating parts and cause severe injury.*
3.    The foot switch on this unit is for your safety and should not be removed. Maintain foot switch in good condition and operate correctly at all times.
4.    Switch should be in "Off" position before plugging in power cord, changing parts or moving pipe or rod.
5.    This unit is designed for threading or cutting pipe or both and any other use may cause serious injury.
6.    Unless unit is secured to floor, machine can tip over causing severe injury.

[Id.] (emphasis added).

The parties inspected the machine in July of 2007, and noted that the text is worn to the point that it is illegible. [R. 35, Memo at 5]. In addition to the warning plate, the name plate, which is affixed to the housing of the machine directly below the power switch, states in the relevant part: "CAUTION: FOR SAFE OPERATION SEE INSTRUCTION MANUAL." [R. 35, Exh. O]. The Operator's Manual for the Ridgid 300 contains several additional warnings, including the following:

1.    Know your machine. Read Operator's Manual carefully. Know the limitations, as the specific potential hazards peculiar to this machine.
      ...
9.    *Wear proper apparel. No loose clothing gloves, neckties, or jewelry to get caught in moving parts. Nonslip footwear is recommended. Wear protective hair covering to contain long hair.*
10.   Do not overreach. Operate machine from Foot Switch side only. Keep proper footing and balance. Be sure foot can be removed safely from Foot Switch at all times. *Do not reach across machine and keep hands, body and tools away from moving parts*.

[R. 35, Exh. I] (emphasis added). On the day of the accident, the Plaintiff was wearing a pair of

11

coveralls that had been issued to him by AK Steel, who issued coveralls to all the contractors

working on the premises. [Anderson Dep. 156:3-159:3]. According to the Plaintiff, these coveralls

often did not fit him well; on the day of the accident, the legs on his coveralls were too long, and

though the arms fit well, he testified that he had to roll up the sleeves. [Anderson Dep. 160:11-

162:5].

      In his deposition, the Plaintiff testified at length regarding his familiarity with the Ridgid 300,

and his knowledge of the warning labels and instructions:

> Q:    Can you estimate for us, Mr. Anderson, how many times you think you've
>        run a RIDGID model pipe cutter and threader?
> A:    Miles and miles.
> Q:    Miles and miles of pipe?
> A:    Pipe, threaded on each end from 6 inches to 20-foot pieces.
> Q:    That would be hundreds and hundreds of times; is that correct?
> A:    Correct.

[Anderson Dep. 73:6-73:15]. When Defendants' counsel showed the Plaintiff a copy of the original

warning label, the Plaintiff responded that it did not look familiar to him. [Anderson Dep. 80:7-

80:14]. Despite the fact that he said he was not familiar with the warning label itself, the Plaintiff

testified that because of his experience with the Ridgid 300, he "probably knew all of [the

warnings]." [Anderson Dep. 86:19-86:24].

      The Plaintiff engaged in the following discussions regarding the Operator's Manual:

> Q:    Have you ever seen an operator's manual for a RIDGID pipe cutting and
>        threading tool?
> A:    Never.
> Q:    Have you ever asked to see one?
> A:    Never.
> Q:    Have you ever wondered whether they exist?
> A:    Never.

[Anderson Dep. 77:13-77:23]. The Plaintiff went on to state that he considered running the Ridgid

300 to be an easy three-step process, and that based on his familiarity and experience with the machine, he "didn't think [he] would need to read [the manual]. It's a one, two, three step process." [Anderson Dep. 84:12-85:10].

The Plaintiffs' claim for failure to warn is made under the strict liability principles set forth in the Restatement (Second) of Torts, and subsequently adopted by the Kentucky courts.

> In 1966, our Supreme Court subscribed to the principle of strict liability as stated in section 402A of the Restatement (Second) of Torts. *See* Dealers Transp. Co. v. Battery Distrib. Co., 402 S.W.2d 441, 446-47 (Ky. 1965). The strict liability principle of section 402A describes a product as defective for purposes of the application of strict liability as one "in a defective condition unreasonably dangerous to the user or consumer or to his property." Restatement (Second) of Torts § 402A (1965).

Worldwide Equip., Inc. v. Mullins, 11 S.W.3d 50, 55 (Ky. App. 1999). The purpose of strict liability is to "permit injured parties a method of reaching back to the manufacturer or distributor of commercial products, following some form of failure on the product's part." Id. There are several ways a plaintiff may recover in strict liability, including "defective design, defective manufacture, or failure to warn." Clark v. Hauck Mfg. Co., 910 S.W.2d 247, 251 (Ky. 1995). The Plaintiffs' claim in the present case is based on failure to warn.

The Defendants argue that the failure to warn claim must fail because the Plaintiff's "deliberate choice to ignore all warnings and instructions precludes him from establishing that the alleged failure to adequately warn proximately caused his injuries. [R. 35, Memo. at 9]. The Plaintiffs counter that "[t]he warning label that was (originally) attached to the Ridgid 300 machine was inadequate to warn the Plaintiff of the lack of a brake on the machine, by which the operator could stop the machine from rotating." [R. 36 at 4]. Under the Plaintiffs' theory, the inadequacy of the warnings rendered the Ridgid 300 "defective," and therefore "[t]he question whether Defendant,

13

Ridge Tool Company, owed Plaintiff a duty to warn of a dangerous condition is one that should be resolved by a jury." [Id. at 8].

The Plaintiffs have the burden of establishing the elements of the claim for failure to warn, including the element of causation. Morales v. American Honda Motor Co., 71 F.3d 531, 537 (6th Cir. 1995). "Under Kentucky law, causation or proximate cause is defined by the substantial factor test: was the defendant's conduct a substantial factor in bringing about plaintiff's harm?" Id. *citing* Deutsch v. Shein, 597 S.W.2d 141, 144 (Ky. 1980). It is the opinion of this Court that, as a matter of law, the Plaintiff cannot show that the Defendant's alleged failure to warn was a "substantial factor" in causing the Plaintiff's injuries. The original warning provided by the Defendant was fair and adequate, and gave the user notice of the potential danger. Furthermore, the Plaintiff's testimony clearly shows that he was aware of the dangers posed by the Ridgid 300. Finally, the Defendant should not be held liable for failure to warn because of the intervening failure of the owner to properly maintain the warning plate.

As to the text of the warning itself, Kentucky law imposes a duty on manufacturers "to warn of dangers known to them but not known to persons whose use of the product can reasonably be anticipated." Watters v. TSR, Inc., 904 F.2d 378, 381 (6th Cir. 1990) *citing* Post v. American Cleaning Equip. Corp., 437 S.W.2d 516 (Ky. 1968). It is also the law in Kentucky that "there is no duty to warn of a known danger." King v. Ford Motor Co., 209 F.3d 886, 894 (6th Cir. 2000). Any warning provided to persons using a product "must be fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse." Post, 437 S.W.2d at 520. The Post court provided an example:

[I]t may be doubted that a sign warning, "Keep off the Grass," could be deemed

14

sufficient to apprise a reasonable person that the grass was infected with deadly snakes. In some circumstances a reasonable man might well risk the penalty of not keeping off the grass although he would hardly be so daring if he knew the real consequences of his failing to observe the warning sign.

Id. at 520.

In the current matter, the Ridgid 300 warning plate had the following notice affixed to it: "Do not operate unit with loose or frayed clothing. It may get caught in rotating parts and cause severe injury." [R. 35, Exh. N]. This warning provided the Plaintiff with a very specific danger, and clear consequences of failure to comply with the warning. The Plaintiff argues that the warning label was "inadequate to warn the Plaintiff of the lack of a brake on the machine." [R. 36 at 4]. The fact that the warning did not expressly say that the Ridgid 300 did not have a brake is inconsequential. First, while the manufacturer is under a duty to provide a fair and adequate warning, it "did not have to provide a warning of bewildering particularity." Jordan v. Massey-Ferguson, Inc., 1996 WL 662874 (6th Cir. 1996).[2] The warning provided the Plaintiff with a specific danger and the consequence of noncompliance. The warning is not legally insufficient merely for failing to expressly state the precise mechanisms which could ultimately be responsible for injury.

Furthermore, the Plaintiff was aware of the potential danger, and thus cannot recover under Kentucky law. See, e.g. King v. Ford Motor Co., 209 F.3d 886, 894 (6th Cir. 2000). During his deposition, the Plaintiff was asked to read the text of the original warning plate on the Ridgid 300, including the warning regarding the risk of loose clothing getting caught in the machine. [Anderson Dep. 85:11 - 86:18]. After reading the warning plate, the Defendant's attorney asked:

---

[2] In regards to the warning in the Jordan case, which involved a tractor accident, the court stated the following: "Decedent knew of the fundamental danger that the tractor could roll over if driven on a steep hill. Unfortunately, this is exactly what happened. Defendant did not have to inform consumers about each of the innumerable ways in which such an accident could occur." Id. at *5.

15

> Q:     Okay. Now, let me ask you, before I made you read that, was there anything about that that you didn't already know before I made you read it?
> A:     That I did not know? No, I would say I probably knew all of them.
> Q:     Again, from you observation and experience?
> A:     Yes.

[Anderson Dep. 86:19 - 87:2]. The Defendant's attorney then began questioning the Plaintiff regarding the power of the machine, which led to this exchange:

> Q:     ...[I]f somebody has got [the machine] on and they've got the switch on and it's cutting or if you're reaming or whatever you're doing with it, it's rotating because it's energized by the motor, but what about when it's deenergized because the switch has been turned off but it's still rotating? Have you ever tried to stop either the rotating parts or the pipe to make it stop quicker after you took your foot off?
> A:     Never.
> Q:     Why not?
> A:     I never - - well, if I had my foot on the pedal, then I wouldn't be the one grabbing the other end. That's one thing. Common sense, I am going to say. Why would I want to grab something that - - it would be like me grabbing a team of horses running a hundred mile [sic] an hour. It would be stupid.

[Anderson Dep. 94:8 - 95:1].

It is clear from these exchanges, as well as other evidence on the record, that the Plaintiff had enough experience and personal knowledge of the Ridgid 300 to be aware of the danger that his clothes could become entangled in the machine, and to be aware that the machine did not have a braking mechanism. Kentucky law does not require the manufacturer to warn of dangers that are known to the user. The Plaintiff's testimony in his deposition is unambiguous, and no jury could find that the Plaintiff was unaware of the risk of injury posed by the Ridgid 300. See Demaree v. Toyota Motor Corp., 37 F. Supp. 2d 959, 967-68 (W.D. Ky. 1999). The Defendant's motion for summary judgment should be granted as to Plaintiff's claim for failure to warn.

In addition to the reasons just discussed, the Defendant's motion should be granted because

16

of the intervening failure to maintain the Ridgid 300. The machine that injured the Plaintiff was manufactured in the early 1980s, and was purchased by State Electric Supply in Huntington, West Virginia on January 28, 1982. [R. 35, Exh. J]. When the accident occurred, the machine was more than twenty years old. At the time of the accident, the machine was owned by Pritchard Electric Company, also located in Huntington, West Virginia. The Defendant claims that when the parties inspected the machine, among other things, they found that "the identification plate was severely worn and the warning decal was completely illegible." [R. 35, Memo. at 4-5]. The Plaintiff does not dispute this statement.

Under Kentucky law, the Defendant would be entitled to summary judgment because of the intervening failure of the machine's owners to properly maintain the warning decal. As stated by the Kentucky Supreme Court:

> Any high-powered piece of machinery can be dangerous if it is improperly maintained or repaired. There is a limit beyond which the manufacturer simply cannot as a practical matter be expected to go. He is entitled, we think, to rely on the owner of the machine to assume the responsibility for keeping it in safe working order. The owner's failure to do so (and to warn the operator accordingly) might constitute superseding negligence if it could be found that the tool was unreasonably dangerous in the first place.

Ulrich v. Kasco Abrasives Co., 532 S.W.2d 197, 201 (Ky. 1976). The Defendant sold the machine in 1982, and the injury did not occur until 2005. The current owner of the machine was responsible for maintenance of the machine, and according to the testimony of Michael Williams, superintendent of electricians at Pritchard Electric Company, maintenance was performed on the machine on an "as needed" basis. [Williams Dep. 11:12-24; 12:22-13:9; 29:15-23]. The manufacturer of a machine cannot be held responsible for injuries caused by the failure of owners to perform routine maintenance and repairs.

17

## V. CONCLUSION

Accordingly, and for the reasons stated above, it is hereby recommended that the Defendants' Motion for Partial Summary Judgment [R. 35], be GRANTED, dismissing with prejudice all Plaintiffs' claims asserted against Defendant Emerson Electric, and dismissing with prejudice Plaintiffs' claims based on Defendants' alleged breach of warranty and failure to warn.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Rule 72(b), Fed. R. Civ. P.

Signed March 12, 2008.

**Signed By:**

**_Edward B. Atkins_** _EBA_

**United States Magistrate Judge**

18