UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 06-116-HRW

GEORGE ANDERSON, ET AL.                                                    PLAINTIFFS,

V.                          **MAGISTRATE JUDGE'S REPORT
                             AND RECOMMENDATION**

RIDGE TOOL COMPANY, ET AL.                                            DEFENDANTS.

## I. INTRODUCTION

This matter has been referred to the undersigned [R. 73] for purposes of issuing a report and recommendation regarding Defendant Ridge Tool Company's Motion to Exclude the Opinion Testimony of O.J. Hahn. [R. 60]. The undersigned held an evidentiary hearing on June 25, 2008, during which testimony was taken from Dr. Hahn. Having considered the briefs of the parties, the testimony of Dr. Hahn, and being otherwise fully advised, this Court recommends, for the reasons set forth within, that the Defendants' Motion to Exclude be denied.

## II. FACTUAL & PROCEDURAL BACKGROUND

The general factual and procedural background of this case is recounted in the undersigned's Report and Recommendation [R. 63] issued on March 12, 2008, and subsequently adopted by Senior United States District Judge Henry R. Wilhoit, Jr. [R. 66].

The matter is presently before the Court on the Defendant's Motion to Exclude the Opinion Testimony of O.J. Hahn. [R. 60]. Dr. Ottfried Johannes Hahn has been retained by the Plaintiff to

testify regarding the design of the Ridgid 300, which the Plaintiff alleges caused the injuries that are at issue in this case. Dr. Hahn received an M.S. in Nuclear Engineering from West Virginia University in 1960, and received his Ph. D. in Mechanical Engineering from Princeton University in 1964. [R. 20 at 3]. Dr. Hahn has taught in some capacity at the University of Kentucky for approximately 40 years; during this time, he has taught courses that include "Engineering Experimentation II" and "Safety Engineering." [Id. at 17]. In addition to his teaching work, Dr. Hahn has performed consulting for, among others: Kentucky Department of Energy; Kentucky Transportation Department; City of Louisville; Kentucky State Fire Marshal; Kuhlman Electric Corporation; and the Tennessee Valley Authority. [Id. at 4]. Dr. Hahn testified that he has also done work for the state OSHA "on special cases when we didn't have the expertise in house." [Transcript of June 25, 2008 Hearing, p. 5 at 9-10 (hereinafter "Tr.")].

Dr. Hahn's Fed. R. Civ. P. 26(a)(2) report was filed with the Court on June 1, 2007. [R. 20]. A supplemental report filed by Dr. Hahn in September of 2007 was not initially filed on the record, but was filed with the Motion to Exclude. [R. 60, Exh. B]. In the Motion to Exclude, [R. 60], the Defendant contends that Dr. Hahn's testimony should be excluded because his reports:

> (1) fail to meet the requirements of Rule 26(a)(2)(B); (2) fail to furnish a sufficient factual and logical basis for his opinions; and, (3) lack the discernable - let alone scientifically reliable - methodology necessary to establish admissibility under Rule 702 and the [Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)] criteria.

[R. 60, Memo. at 1]. The Plaintiff filed a response, stating that Dr. Hahn's reports substantially comply with the requirements of Rule 26, and that Dr. Hahn passes the requirements set forth under FRE 702. [R. 61 at 8-11]. Furthermore, the Plaintiff states: "Dr. Hahn's opinion that the technology existed for a braking system and that the absence of a brake makes the machine unreasonably

2

dangerous is not speculation, but a solid logical opinion that was reached based upon observation and testing of the machine and understanding the facts of the accident." [Id. at 11].

III. ANALYSIS

The Defendant's arguments regarding compliance with FRCP 26 and FRE 702 will be discussed in turn.

**A. Dr. Hahn's Report Complies with Rule 26**

The first issue raised by the Defendant is Dr. Hahn's compliance with Federal Rule of Civil Procedure 26, which reads in pertinent part:

> (A)   *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
>
> (B)   *Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
> > (i)   a complete statement of all opinions the witness will express and the basis and reasons for them
> >
> > (ii)   the data or other information considered by the witness in forming them;
> >
> > (iii)   any exhibits that will be used to summarize or support them;
> >
> > (iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;
> >
> > (v)   a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
> >
> > (vi)   a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2). There are several purposes behind the disclosure requirements of Rule 26(a)(2). An obvious purpose is to prevent "surprise[s] as to the scope of testimony." Fielden v. CSX Transp., Inc., 482 F.3d 866, 871 (6th Cir. 2007).  This prevention of surprises during later stages of

3

litigation also serves to conserve judicial resources. Nan Ya Plastics Corp. v. Global Polymers, LLC, 2005 WL 5988669 at *2 (W.D. Ky. 2005) *citing* Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995). Another purpose was revealed by the Advisory Committee, which stated:"Effective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand." Advisory Committee on Federal Rules, *Notes to 1970 Amendment to Rule 26(b)(4)*.

Dr. Hahn's report, while brief, is sufficient to pass muster under Rule 26(a)(2). Dr. Hahn sets forth the information he used from the case, and provided his conclusions derived therefrom.[1] Dr. Hahn testified that his opinions and conclusions are based on principles that are "very fundamental to engineering. In fact, we are covering that now in some 9th grades, that basic topic of design, guarding and instructions to try to get students interested in engineering, so it's going down to that level now. It's a very fundamental concept of engineering design which comes in every course and even in technical colleges." [Tr. 8 at 17]. Dr. Hahn's testimony in the present case is similar to that of an accounting expert in Thompson v. Doane Pet Care Co., 470 F.3d 1201 (6th Cir. 2006), which involved a challenge to the expert's Rule 26 report. In that case, a panel of the Sixth Circuit held, "it may be assumed that certified public accountants base their calculations and opinions on the normal general standards of their profession, *i.e.* generally accepted accounting principles." Id. at 1203. Furthermore, the panel noted that counsel who challenged the validity of the report failed to

---

[1] During the Daubert hearing, Dr. Hahn did make conclusions regarding several issues that, admittedly, he did not include in his report, such as, for example, the price of proposed alternative designs. [Tr. 57 at 2-14]. A conclusion such as this could run afoul of Rule 26 as it was not included at all in either report, and may therefore give the Defendant absolutely no notice or opportunity to prepare for cross-examination.

4

"point out what generally accepted accounting principles [the expert] violated or any basis for believing that [the expert] was not following the general standards of his profession." Id. at 1204.

Dr. Hahn has chosen to rely on the "general standards" and "fundamental principles" of his industry, without citation to specific standards or texts. This Court does not question Dr. Hahn's knowledge of the basic principles of engineering, as his impressive curriculum vitae clearly reflects that he would have accumulated such knowledge over the course of his career. As in Thompson, the undersigned believes that there is no compelling reason to impose a "mechanical and formalistic" Id. at 1203, reading of Rule 26 that would exclude Dr. Hahn's testimony. As with the accounting expert in Thompson, Dr. Hahn should be permitted to impart his general knowledge to the jury, despite his failure to fill his Rule 26 report with a litany of general texts and standards that are fundamental to his profession as a whole. To impose such a requirement would force all expert witnesses to provide the basic tenets of their fields in every case in which they testify. Of course, because Dr. Hahn did not disclose such general texts in his reports, the operation of "Rules 26(a)(2)(B) and 37(c)(1) allow [Dr. Hahn], on direct examination, to rely on no more than he disclosed in his Rule 26(a)(2)(B) report." Atmel Corp. v. Information Storage Devices, Inc., 189 F.R.D. 410, 416 (N.D. Cal. 1999). So while Dr. Hahn is permitted to rely on his experience to come to basic conclusions and calculations, he may not, subsequent to filing his reports, attempt to supplement his testimony through use of specific sources that were not disclosed in his Rule 26(a)(2) report.

Despite the protestations of the Defendant to the contrary, none of the purposes of Rule 26(a)(2) have been contravened by Dr. Hahn's report in the present case. As evidenced by the very effective and detailed cross-examination of Dr. Hahn during the Daubert hearing, even without the

benefit of the presence of Defense experts, it is apparent that Dr. Hahn's reports revealed sufficient information for the Defense to prepare a very effective cross-examination of Dr. Hahn and his methodology. A large portion of the Defendant's objection to Dr. Hahn's report seems to be aimed more at the supposed unreliability of Dr. Hahn's methodology, rather than his actual disclosures. These concerns are more appropriately addressed within the Daubert analysis.

For the reasons stated above, the undersigned recommends that the Defendant's Motion to Exclude based on violation of Rule 26(a)(2) should be denied.

**B. Dr. Hahn's Testimony is Admissible under Daubert & FRE 702**

The primary focus of the Defendant's Motion to Exclude is that Dr. Hahn's testimony should be excluded under FRE 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).[2] Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Id. In Daubert, the Supreme Court announced that district courts should serve as "gatekeepers" with regard to proposed expert testimony. Daubert and its progeny have resulted in the following list of non-exclusive factors that are relevant to a district court's examination of expert witnesses:

> (1) whether a theory or technique can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory or

---

[2] Though Daubert itself dealt specifically with scientific testimony, the Supreme Court has confirmed that the same factors can be considered when the proffered testimony relates to some other technical or specialized field. See Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

technique enjoys general acceptance within a relevant scientific community.

Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 429 (6th Cir. 2007) *citing* Daubert, 509 U.S. at 592-94. In addition to the factors enunciated by the Supreme Court, subsequent courts have recognized the so-called "fifth factor," namely, "whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of litigation, or whether they have developed their opinions expressly for purposes of testifying." Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1317 (9th Cir. 1995). The proponent of the expert testimony, in this case the Plaintiff, has the burden of showing that the testimony is admissible. Daubert, 509 U.S. at 593 n. 10.

In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court made it clear that in the engineering context, the factors listed above are not a "definitive checklist or test." Id. at 150. "As a baseline premise, in rulings on the admissibility of expert opinion evidence, the trial court has broad discretion." Brainard v. American Skandia Life Assur. Corp., 432 F.3d 655, 663 (6th Cir. 2005). District courts must conduct the "flexible" inquiry based on "the facts of a particular case, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Manitowoc Boom Trucks, 484 F.3d at 429-30. Applying the flexible inquiry set forth in Daubert,  it is the opinion of the undersigned that Dr. Hahn's testimony should be permitted.

The Defendant notes several times that Dr. Hahn never conducted testing on the actual machine that was involved in the accident. However, in the present case, Dr. Hahn's inability to know with certainty which machine was involved in the accident is not his fault, and should not be held against the Plaintiff. After the initial tests conducted at the scene and documented by Robert Schapker, [R. 28] the Ridgid 300 involved in the accident has not been identified with certainty.

When given the opportunity in July, 2007, Dr. Hahn and one of the Defendant's experts examined a machine that was thought to have bene involved in the accident. At that time, Dr. Hahn updated his initial report and stated that he had not changed his opinions.

There is no requirement that an expert's theories must actually be tested in order to satisfy the Daubert inquiry. For example, in United States v. Sullivan, 246 F. Supp. 2d 700 (E.D. Ky. 2003), United States District Judge Jennifer Coffman permitted evidence regarding fingerprint evidence; she noted that the methodology at issue was "amenable to testing, [but] such testing has not yet been performed." Id. at 704. There is no serious contention that Dr. Hahn's conclusions regarding the number of rotations of the machine is an "untestable" theory. Rather, they seem to involve fundamental calculations involving torque and other forces at work within the Ridgid 300. [Tr. 51]. These theories and conclusions are very easily tested by Defendant's experts, as they merely involve calculations. In Benton v. Ford Motor Co., 492 F. Supp. 2d 874 (S.D. Ohio, 2007), involving the Ford Explorer, the court stated:

> Defendant criticizes [the expert] for not having done any testing in this case. This misunderstands, however, Daubert's preference for testing in the first factor. In crafting a test to enable courts to sort out unreliable expert testimony, the Supreme Court explained that the ability of a theory or technique to assist the trier of fact turns on 'whether it can be (and has been) tested.' Daubert, 509 U.S. at 593. Defendant has not demonstrated that [the expert's] methodology has not been, or is incapable of being tested. To the contrary, [the expert] explains all of the calculations that he uses to reach his conclusions regarding the Explorer's stability index.

Id. at 878-79 (internal punctuation and citation omitted). Furthermore, the Sixth Circuit has stated that a district court has the discretion to decide that an expert's failure to test their theories goes "to the weight of his testimony...not to its admissibility." Clay v. Ford Motor Co., 215 F.3d 663, 668 (6th Cir. 2000). Dr. Hahn's failure to conduct tests on the actual machine do not require exclusion under

8

Daubert, both because of the difficulties in identifying the actual machine, and the readily-testable nature of Dr. Hahn's conclusions.

As to the element of peer review or publication, courts have noted that publication on a particular issue "is but one element of peer review, [it] is not a sine qua non of admissibility." United States v. Bonds, 12 F.3d 540, 564 (6th Cir. 1993) *citing* Daubert, 509 U.S. at 593. A review of Dr. Hahn's credentials shows that he has published a great number of papers, though none appear to be directly related to the topic at issue in this case. [R. 20, 8-15]. As noted by Dr. Hahn during his testimony "the matters which we are talking [about] here is [sic] very fundamental to design and normally we only publish recent advancements and what we are talking about here today is over 30 years old technology." [Tr. 8, 15-19]. The general nature of Dr. Hahn's testimony in the present action does not lend itself to publication, and the fact that Dr. Hahn's specific conclusions in this case have not been subject to peer review does not weigh against its admissibility.

There has not been specific testimony regarding the potential error rate of Dr. Hahn's calculations, and this Court will not, therefore, address this element at length. It is sufficient to note that any "[c]oncerns about the expert's probability estimates can be addressed through cross-examination." United States v. Sullivan, 246 F. Supp. 2d 700, 704 (E.D. Ky. 2003). Likewise, the Court has been presented with no evidence to dispute that Dr. Hahn's methodology, based on general and fundamental principles of engineering, lack general acceptance. The general acceptance of Dr. Hahn's theories is supported by Dr. Hahn's testimony, as well as the Instructional Aid for Occupational Safety and Health in Mechanical Engineering Design, [R. 75] prepared by the American Society of Mechanical Engineers. There is no evidence in the record to suggest that Dr. Hahn's methodologies are not generally accepted.

9

The undersigned will also address the so-called fifth factor of the <u>Daubert</u> analysis, which was first identified by the Ninth Circuit when <u>Daubert</u> was remanded by the Supreme Court. The Ninth Circuit stated that courts should consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for the purposes of testifying." <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 43 F.3d 1311, 1317 (9th Cir. 1995). The panel explained that the fact that "an expert testifies based on research he has conducted independent of the litigation provides important, objective proof that the research comports with the dictates of good science." <u>Id</u>. In the present case, Dr. Hahn's testimony regarding the Ridgid 300 itself does not flow directly from any research he conducted prior to litigation. However, his extensive background in teaching, including teaching courses on safety engineering, as well as his work with various state agencies and corporations, provides evidence that his methodologies are sound. Though Dr. Hahn was hired expressly for litigation, this alone should not result in the exclusion of his testimony.

The Court is not unsympathetic to the arguments of the Defendant. There are certainly areas of Dr. Hahn's testimony that could have been more clearly defined, or more closely tested. However, <u>Daubert</u> does not demand perfection. In a case such as this, the expert's testimony belongs before a jury. <u>Kamp v. FMC Corp.</u>, 241 F. Supp. 2d 760, 768-69 (E.D. Mich. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Clay v. Ford Motor Co.</u>, 215 F.3d 663, 669 (6th Cir. 2000) *citing* <u>Daubert</u>, 509 U.S. at 596. As evidenced by defense counsel's questioning at the evidentiary hearing, the Court is fully confident that the Defendant will be able to use these traditional means to attack what it perceives as deficiencies in

10

Dr. Hahn's testimony and methodology. Based on the facts of this particular case, as well as Dr. Hahn's expertise in the area of mechanical engineering, and the relatively basic nature of his testimony, the undersigned recommends that the Defendant's Motion to Exclude [R. 60] be denied.

## V. CONCLUSION

Accordingly, and for the reasons stated above, it is hereby recommended that the Defendant's Motion to Exclude the Opinion Testimony of O.J. Hahn [R. 60] be DENIED.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Rule 72(b), Fed. R. Civ. P.

Signed July 21, 2008.

**Signed By:**

*Edward B. Atkins*  EBA

**United States Magistrate Judge**

11